THE CLAYTON COAL COMPANY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46158. Filed February 21, 1957.

*Charles A. Haskell, Esq.*, for the petitioner.
*David Karsted, Esq.*, for the respondent.

814

OPINION.

ARUNDELL, *Judge:* Petitioner claims relief under section 722 (a) and (b) (1) of the Internal Revenue Code of 1939,[1] for the calendar year 1944, and also the benefit of any carryovers of unused excess profits credit from the years 1942 and 1943 based on a constructive average base period net income for those years. It contends that the happenings in sections S, A, B, and C of its Morrison Mine were "events unusual and peculiar" in its experience and that as a result of such so-called unusual and peculiar events its "normal production, output, or operation was interrupted or diminished" during the years 1938 and 1939.

The respondent contends that none of the so-called events were unusual or peculiar within the meaning of section 722 (b) (1) and that petitioner has not shown that they caused an interruption or diminishment in petitioner's normal production, output, or operation. The respondent further contends that "even if the events were 'unusual and peculiar' and even if they, either individually or together, did affect petitioner's production, no reconstruction which comports with logic and the evidence would exceed the petitioner's excess profits credit computed under section 713 (e)."

For reasons hereinafter stated, we agree with the respondent's latter contention. Therefore, we need not decide whether petitioner has established a qualifying factor under section 722 (b) (1) by reason of the happenings in sections S, A, B, and C of its Morrison Mine. We may for the purposes of this opinion assume that it has, and immediately direct our attention to whether, on the basis of such assumption, a constructive average base period net income could logically be established under section 722 (a) which would be in excess

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * *

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

(1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer, * * *

of petitioner's average base period net income allowed under section 713 (e) [2] of the 1939 Code in the amount of $66,052.82.

Under section 713(e), petitioner was permitted to substitute 75 per cent of the average excess profits net income of its 3 best years (1936, 1937, and 1938) for its poorest year (1939). This resulted in a substitution of $52,842.25 of excess profits net income in place of its actual excess profits net income for 1939 of $16,135.58, or a benefit to petitioner of $36,706.67. Before petitioner can obtain any further relief under section 722, it must establish that if these assumed, unusual, and peculiar events had not occurred, it would have had an excess profits net income for the base period in excess of its actual amount, plus the benefit it received under section 713(e). Under the facts of this case, such a reconstruction, in our opinion, has not been established.

In its application for relief and in its brief, petitioner claims it has established a constructive average base period net income of $100,852. In arriving at this amount, petitioner has made no reconstruction of its 1936 and 1937 excess profits net income but has reconstructed the tonnage produced and the net income from *both* the Clayton and Morrison Mines for the years 1938 and 1939. It then applied the growth formula under section 713 (f) of the 1939 Code, which is not permitted under our decision in *Homer Laughlin China Co.*, 7 T. C. 1325. A summary of petitioner's reconstruction, together with the arithmetical average and the average under section 713 (e), are in the margin.[3]

---

[2] SEC. 713. EXCESS PROFITS CREDIT—BASED ON INCOME.
(e) AVERAGE BASE PERIOD NET INCOME—GENERAL AVERAGE.—The average base period net income determined under this subsection shall be determined as follows:
(1) By computing the aggregate of the excess profits net income for each of the taxable years of the taxpayer in the base period, reduced by the sum of the deficits in excess profits net income for each of such years. If the excess profits net income (or deficit in excess profits net income) for one taxable year in the base period divided by the number of months in such taxable year is less than 75 per centum of the aggregate of the excess profits net income (reduced by deficits in excess profits net income) for the other taxable years in the taxpayer's base period divided by the number of months in such other taxable years (herein called "average monthly amount") the amount used for such one year under this paragraph shall be 75 per centum of the average monthly amount multiplied by the number of months in such one year, and the year increased under this sentence shall be the year the increase in which will produce the highest average base period net income;
(2) By dividing the amount ascertained under paragraph (1) by the total number of months in all such taxable years; and
(3) By multiplying the amount ascertained under paragraph (2) by twelve.

[3]

| Year | Arithmetical average base period net income | Average base period net income under sec. 713 (e) | Claimed constructive average base period net income |
|---|---|---|---|
| 1936 | $97,193.77 | $97,193.77 | $97,193.77 |
| 1937 | 81,378.39 | 81,378.39 | 81,378.39 |
| 1938 | 32,796.85 | 32,796.85 | 103,413.83 |
| 1939 | 16,135.58 | 52,842.25 | 90,579.55 |
| Aggregate | $227,504.59 | $264,211.26 | $372,565.54 |
| Average | 56,876.15 | 66,052.82 | 93,141.39 |
| Benefit claimed under section 713 (f) | | | $7,710.61 |
| Claimed constructive average base period net income | | | $100,852.90 |

It is obvious that petitioner's reconstruction is wholly out of line with the facts set out in our findings. Of the additional excess profits net income reconstructed for 1938 of $70,616.98 ($103,413.83 minus actual of $32,796.85), $42,043.04 represented additional income reconstructed at the Clayton Mine and $28,573.94 at Morrison. Of the additional excess profits net income reconstructed for 1939 of $74,443.97 ($90,579.55 minus actual of $16,135.58), $38,452.89 represented additional income reconstructed at the Clayton Mine and $35,991.08 at Morrison. No basis exists for any reconstruction of the net income from the Clayton Mine. All of the alleged unusual and peculiar events were at the Morrison Mine and not at the Clayton Mine.

Petitioner, in reconstructing the additional excess profits net income from the Morrison Mine for the years 1938 and 1939 of $28,573.94 and $35,991.08, respectively, has disregarded the constant decline in the net income per ton realized during the base period at that mine. As set out in our findings, the net income per ton at the Morrison Mine declined from 37.8 cents per ton in 1936 to 9.4 cents in 1938 and 6.9 cents in 1939. This decline was due largely to the lower sales price of coal at the Morrison Mine from $2.479 per ton in 1938 to $2.225 per ton in 1939, in the increased cost of mining in 1938, and in the increased cost of selling and administrative expenses in 1938 and 1939.

As previously stated, all the alleged unusual and peculiar events occurred at the Morrison Mine. If we were to asume that these so-called events were unusual and peculiar in the experience of petitioner, and that because thereof, petitioner's normal production, output, or operation was interrupted or diminished, and that absent such assumed events petitioner's production and sales at the Morrison Mine during the last half of the base period would have been 91,500 [4] tons greater than was actually produced and sold during that period, we fail to see how petitioner's additional net income from such additional tonnage could amount to as much as the benefit of $36,706.67 which petitioner received under section 713 (e). A net income of that magnitude on 91,500 tons would average over 40 cents per ton and petitioner's actual net income per ton at the Morrison Mine during 1938 and 1939 was only 9.4 cents and 6.9 cents, respectively, and in fact its net income during the entire base period from the Morrison Mine never reached as much as 40 cents per ton.

On the basis of all the evidence, we hold that petitioner has failed to show that it is entitled to any relief under section 722 for the

---

[4] Section S_____ 10,000 tons
Section A_____ 32,500 tons
Section B_____ 24,000 tons
Section C_____ 25,000 tons

Total_____ 91,500 tons

year 1944, or to the benefit of any carryovers of unused excess profits credit from the years 1942 and 1943 based on a constructive average base period net income for those years.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*